UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____
                                     :
In re                                :
                                     :
MALCOLM C. SWASEY,                   :
                                     :
          Debtor.                    :    Chapter 7
                                     :    Case No. 11-20627 (JNF)
_____:

**MOTION OF TRENWICK AMERICA REINSURANCE CORPORATION
AND UNUM LIFE INSURANCE COMPANY OF AMERICA
TO CONDUCT BANKRUPTCY RULE 2004 EXAMINATIONS**

Trenwick America Reinsurance Corporation and UNUM Life Insurance Company of America (together, the "Movants") hereby request that this Court enter an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure:

(1) compelling Malcolm C. Swasey (the "Debtor") to appear for an examination and to produce and permit inspection of those documents described in Exhibit A hereto;

(2) authorizing the issuance of subpoenas (in substantially the same form as Exhibits B - H hereto) compelling the following persons to appear for examination and/or to produce documents:

          (a)  Denise Swasey;

          (b)  IRC-OHU Management Company, Inc.;

          (c)  Eastern Bank;

          (d)  UBS;

          (e)  Loring Swasey;

(f)   Joseph Cifuni; and

(g)   Bowditch & Dewey; and

(3) requiring the Debtor to provide Movants' counsel with Denise Swasey's last known address for purposes of serving a Rule 2004 subpoena.

In support of this Motion, Movants represent as follows:

## BACKGROUND

### The District Court Action

1.    On May 23, 2011, the United States District Court for the District of Massachusetts (the "District Court") entered a judgment in favor of the Movants and against the Debtor and two entities controlled by him, IRC, Inc. and IRC Re, Limited, for violations of Massachusetts General Laws Chapter 93A (the "Judgment").[1]    A copy of the Judgment is attached to the Declaration of Christopher P. Anton (the "Anton Dec.") as Exhibit A.

2.    In a separate, published, 56-page Memorandum and Order dated February 16, 2011, the District Court determined that the Debtor, individually and through the two codefendants that he controlled, disavowed a reinsurance contract in bad faith,

---

[1] As discussed more fully below, the requested examinations are in no way duplicative of the discovery that was conducted in the District Court action. The discovery in the District Court action took place more than three years ago and was not addressed to the Debtor's assets, liabilities and financial affairs.

raised sham defenses, gave false and misleading testimony, and engaged in other outrageous misconduct before and during the litigation in a deliberate effort to frustrate the Movants' contractual rights.  See Trenwick America Reinsurance Corp. v. IRC, Inc., 764 F. Supp. 2d 274 (D. Mass. 2011).  A copy of the published version of the February 16, 2011 Memorandum and Order is attached to the Anton Dec. as Exhibit B.

3.   The District Court described the Debtor's pre- and post-complaint conduct as "simply outrageous," id. at 282, and his testimony as "wholly incredible," id. at 290, "misleading," id., "preposterous," id. at 290, "ludicrous," id. at 292, internally contradictory and obviously false," id. at 290, and worthy of "indignation."  Id. at 306.  The Court observed that "on more than one occasion at trial, Swasey admitted that he had given misleading or incorrect testimony during his deposition on key issues."  Id. at 290 (emphasis in original).  Among other things, the Debtor "lied about the status of the approximately $1.2 million of cash premium payments that IRC Re received from plaintiffs."  Id. at 290.  The Court determined that the Debtor's "pre-litigation conduct was compounded by his postlitigation antics, misrepresentations during his deposition, and even during his testimony."  Id. at 306.

4.   The Court awarded the Movants compensatory damages in the amount of $4,182,055.32, which amount was doubled in

accordance with Chapter 93A, prejudgment interest of $1,643,033.15, and attorneys' fees and expenses of $2,661,013.83.

6.   On October 21, 2011, Movants served the Debtor with two subpoenas in aid of Judgment: (1) a subpoena addressed to the Debtor individually; and (2) a subpoena addressed to the Debtor as officer and registered agent of a company called IRC-OHU Management Company, Inc. ("IRC-OHU").[2]   The subpoenas included demands for the production of various documents relating to the Debtor's assets, liabilities and financial affairs.   Copies of the subpoenas are attached to the Anton Dec. as Exhibit C.

7.   Pursuant to the subpoenas, the Debtor was to produce responsive documents on November 8, 2011, and IRC-OHU was to produce responsive documents on November 9, 2011.   Neither the Debtor nor IRC-OHU produced documents in response to the subpoenas or otherwise responded to the subpoenas.

## The Debtor's Bankruptcy Case

8.   On November 11, 2011 (the "Petition Date"), the Debtor filed a "bare bones" Chapter 7 petition with this Court, staying Movants' efforts to enforce the District Court's Judgment against the Debtor.

---

[2] The Debtor is the sole shareholder of IRC-OHU.   IRC-OHU was not a party in the District Court action.

9.   As of the Petition Date, the sum of $11,476,251.93 remained due and owing to the Movants under the Judgment, inclusive of post-judgment interest.

10.   On November 18, 2011, the Debtor filed a motion for an extension of time to file his schedules, citing "a large quantity of paperwork to sort through in order to complete the Schedules." [Docket Entry No.12]

11.   The Court granted the motion and, on December 2, 2011, the Debtor filed his Schedules and Statement of Financial Affairs (the "Petition Documents"). [Docket Entry Nos. 14 and 17-21]

12.   A meeting of creditors was held on December 15, 2011.

13.   The Debtor's Petition Documents and his testimony at his meeting of creditors suffer from the same evasiveness and lack of candor that characterized the Debtor's conduct in the District Court proceedings, and raise serious questions as to the Debtor's entitlement to a discharge.   For example:

   A.   The Debtor grossly undervalued his residence in Manchester, Massachusetts, in his Petition Documents.   The property was recently listed for sale in the range of $1,950,000 to $2,400,000 -- far in excess of its scheduled fair market value of $1,620,000.   See Anton Dec., Ex. D (Property Listing), Ex. E (Printout from Zillow.com website

with listing history), Ex. F (Excerpts from Debtor's
Schedules and Statement of Financial Affairs).

B.   The Debtor's Petition Documents identify him as
the sole owner of the Manchester residence.  See Anton
Dec., Ex. F.  However, he testified at his meeting of
creditors that his former wife, Denise Swasey, is a co-
owner of the property.  In fact, any interest of Denise
Swasey in the property is the result of a blatantly
fraudulent transfer.  The Debtor purportedly deeded a one-
half interest to Denise Swasey in January 2009, several
years following their marriage, for no consideration, and
while the Movants' District Court lawsuit was pending and
the Debtor and his codefendants (whom he controlled) were
engaged in the outrageous post-litigation misconduct found
by the District Court.  Further, the deed was prepared by,
witnessed by and recorded by his litigation attorney in
that action.  See Anton Dec., Ex. G (Deed dated January 2,
2009).

C.   The Debtor failed to disclose in his Petition
Documents a 1926 Steinway grand piano located at the
residence.  See Anton Dec., Ex. F. On examination by the
Movants' counsel at the Debtor's meeting of creditors, the
Debtor admitted that he is the owner of the piano but then
changed his testimony and claimed that it was a wedding

present for his former wife.  He also testified that the piano was "appraised at about $5,000."  On further questioning, the Debtor admitted that the piano was never appraised. <u>See</u> Anton Dec., Ex. H (Excerpts of Transcript of December 15, 2011 Meeting of Creditors), Tr. at 39:24-40:24.

D.  In attempting to explain the disposition of the many millions of dollars of cash and stock that he received in connection with his sale of IRC, Inc. to National Financial Partners Corp. ("NFP") in 2003 and his continued management of IRC, Inc., the Debtor testified at his meeting of creditors that he paid $1.5 million in legal fees to Michael Angelini, Esq. of Bowditch & Dewey to defend the Movants' lawsuit.[3]  He admitted on further examination, however, that IRC Re paid most of the fees and that he spent "somewhere around $300,000." <u>See</u> Anton Dec., Ex. H, Tr. at 28:25-31:2.

E.  The Debtor, in explaining the disappearance of the millions of dollars he received from NFP, vaguely described "three very poor investments," including his

---

[3] Upon information and belief, between 2003 and 2008/2009 the Debtor received in excess of $10 million of cash and tens of thousands of shares of NFP, a publicly traded company (NYSE: NFP).  The Debtor admitted at his meeting of creditors that he received approximately $8 million from NFP between 2003 and 2004.

supposed investment of $700,000 in "Shannon Boats" of
Bristol, Rhode Island, which, according to the Debtor, went
bankrupt. Id., Tr. at 7:9-14; 28:22-29:12. A nationwide
PACER search reveals that Shannon Corporation, d/b/a
Shannon Boat Company, of Bristol, Rhode Island, filed a
voluntary Chapter 11 petition in the United States
Bankruptcy Court for the District of Rhode Island on
November 11, 1988, under Case No. 88-00800. The case was
subsequently converted to a Chapter 7 case and was closed
on October 4, 1993. See Anton Dec., Ex. I (Docket Report
for Shannon Corporation bankruptcy case). Thus, the
Shannon Corporation bankruptcy in 1988 cannot possibly
account for the disposition of funds that the Debtor
received from NFP in 2003-2008/2009.

F. The Debtor grossly undervalued his interest
($27,000.00) in IRC-OHU in his Schedules. See Anton Dec.,
Ex. F. The Debtor testified at his meeting of creditors
that the company's only asset is a used motor vehicle that
he claimed was worth $27,000. In response to repeated
questioning by the Chapter 7 Trustee, the Debtor revealed
that the car is a 2001 BMW with approximately 40,000 miles,
leaving the impression that the Debtor had overvalued the
vehicle (and, hence, his interest in IRC-OHU). However, on
further questioning by counsel for the Movants, the Debtor

disclosed that the vehicle is a BMW Z8 model (an exotic, high performance, limited edition sports coupe), that it was purchased used in 2004 for $90,000, and that it was advertised for sale by his former wife in June 2011 at a price in excess of $85,000. See Anton Dec., Ex. H, Tr. at 6:3-7:2, 18:22-20:1, Ex. J (Internet Advertisement listing the vehicle for sale by Denise Swasey, Manchester, Massachusetts, for $86,500). According to the NADA website, the average retail price of a 2001 BMW Z8 automobile in good to excellent condition is $81,000 – $92,500. See Anton Dec., Ex. K. (Printout from NADA Website).

G.   The Debtor did not disclose his ownership interest in IRC Re or his status as an officer and director of that company in his Petition Documents. See Anton Dec., Ex. F.

14.   The above examples raise serious issues concerning the Debtor's potential abuse of the bankruptcy process and his entitlement to a discharge under 11 U.S.C. § 727(a)(4). See, e.g., Lussier v. Sullivan (In re Sullivan), 441 B.R. 1 (Bankr. D. Mass) (denying discharge pursuant to Bankruptcy Code § 727(a)(4) based on false oaths where Debtor failed to disclose luxury watch and understated his bank account balance and the

value of a classic automobile), aff'd, 455 B.R. 829 (1st Cir. BAP 2011).

15. On February 1, 2012, Movants filed a motion to extend their time to object to the Debtor's discharge for 120 days to allow time for discovery concerning the Debtor's entitlement to a discharge. [Docket Entry No. 46].

16. On February 3, 2012, the Debtor filed an objection to Movants' motion. Referring to the District Court action, the Debtor asserted that Movants "have had over four years to investigate Debtor's personal and corporate assets and earnings." Objection, ¶ 5. [Docket Entry No. 48].

17. On the same date, the Court entered an endorsed Order on Movant's motion, which stated: Upon consideration of the Debtor's Objection, the Court grants the Motion in part. The time is extended until April 13, 2012 at 4:30 p.m." [Docket Entry No. 49].

18. As explained in more detail below, the entire thrust of the Debtor's objection was false. No discovery was conducted in the District Court action with regard to the Debtor's assets, liabilities and financial affairs, and Movants' post-judgment discovery efforts were thwarted by the Debtor's bankruptcy filing.

19. On February 10, 2012, Movants filed an adversary proceeding against the Debtor (Adv. Proc. No. 12-01040) in this

bankruptcy case for a determination that the Debtor's obligations under the District Court's Judgment are nondischargeable, pursuant to 11 U.S.C. § 523(a)(6) (the "Nondischargeability Action") .

### Witnesses with Information Relating to the Debtor's Assets, Liabilities and Financial Affairs

20. Movants seek the examination by way of deposition and/or the production of documents from witnesses who, as described below, are believed to have documents and information that relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. Proc. 2004.

21. All examinations will be recorded verbatim by stenographic means. Subpoenas to the non-Debtor witnesses will comport with all applicable rules of procedure.

### *Malcolm Swasey*

22. Movants seek an Order compelling the Debtor to: (1) appear for an examination in Boston within 30 days of the entry of an Order granting Movant's motion to for his examination; and (2) produce for copying and inspection the documents identified on Exhibit A hereto within 15 days of the entry of the Order granting Movant's motion. The examination and document requests

concern, among other things, the Debtor's assets, liabilities and financial condition, and his entitlement to a discharge, including but not limited to: the existence of undisclosed assets; potential fraudulent transfers; and the Debtor's failure to document or credibly explain his dissipation of millions of dollars of cash and securities.

### *Denise Swasey*

23. Movants request permission to issue a subpoena to Denise Swasey, in substantially the form attached as Exhibit B hereto, compelling her to appear for an oral examination and to produce documents relating to the Debtor's assets, liabilities and financial affairs.

24. Denise Swasey is believed to have first-hand knowledge concerning the Debtor's assets, liabilities and financial affairs, including, among other things, the Debtor's interest in the BMW Z8 automobile and the 1926 Steinway grand piano, the Debtor's transfer of his interest in the Manchester residence, and the disposition of the many millions of dollars of cash and stock that the Debtor received from NFP and IRC, Inc.

25. No discovery was sought from Denise Swasey in the District Court action and Denise Swasey was not a witness in that matter.

26. The Debtor testified at his meeting of creditors that Denise Swasey currently resides in California. Efforts to

obtain her address from counsel for the Debtor have been unsuccessful.   See Anton Dec., Ex. L (E-mail correspondence dated February 24, 2012).   Through this motion, Movants request that the Court direct the Debtor to provide Movants' counsel with Denise Swasey's address within 2 business days.

### *IRC-OHU Management Company*

27.   Movants request permission to issue a subpoena to the Debtor in his corporate capacity as the sole officer and director of IRC-OHU, in substantially the form attached as Exhibit C hereto, compelling an oral examination and the production of documents relating to the Debtor's interests in IRC-OHU, including IRC-OHU's assets, liabilities and financial affairs.

28.   The Debtor is the sole shareholder of IRC-OHU.   Thus, any equity interests in IRC-OHU belong to the Debtor's estate. IRC-OHU also is the conduit through which millions of dollars passed from NFP to the Debtor.   It also is the record owner of the BMW Z8 automobile, a valuable potential estate asset.

29.   IRC-OHU was not a party to the District Court action and no discovery was sought from IRC-OHU in that matter.

### *Eastern Bank*

30.   Movants request permission to issue a subpoena to Eastern Bank, in substantially the form attached as Exhibit D hereto, to compel the production of account statements,

cancelled checks and related records, for all accounts held in the name of or for the benefit of the Debtor and/or IRC-OHU, from and after January 1, 2003 (the year of NFP's acquisition of IRC, Inc.).

31. The Debtor testified that he has had only one bank account during the past six years, namely, a checking account with Eastern Bank. See Anton Dec., Ex. H, Tr. at 36:2-11. Upon information and belief, the Debtor's management company, IRC-OHU, also maintains or maintained at least one account with Eastern Bank, which received millions of dollars from NFP.

32. The defendants in the District Court action produced some Eastern Bank records for business accounts held by IRC, Inc. No records for accounts held by the Debtor or IRC-OHU were requested or produced. Movants served a post-judgment subpoena on Eastern Bank. That subpoena, however, was very narrow in scope and was limited to documents reflecting the existence and balances of any mortgages held by Eastern Bank; and (2) the current balances of any bank accounts held by the Debtor. See Anton Dec., Ex. M (Subpoena). The banking records sought by way of the requested Rule 2004 subpoena are necessary for a more complete picture of the Debtor's financial condition and to trace the disposition of the millions of dollars that was transferred in and out of the Eastern Bank accounts.

## *UBS*

33.   Movants request permission to issue a subpoena to UBS, in substantially the form attached as Exhibit E hereto, to compel the production of account statements and related records for all accounts held in the name of or for the benefit of the Debtor from and after January 1, 2003 (the year of NFP's acquisition of IRC, Inc.).

34.   The Debtor testified at his meeting of creditors that he has a retirement account with UBS and that he has been using the account to pay his living expenses, including the mortgages on the Manchester residence.   See Anton Dec., Ex. H, Tr. at 10:9-19.

35.   The Debtor also testified that he has had a brokerage account with UBS during the past six years and that the funds deposited into the account included $500,000 that was paid out to him three years ago from a life insurance policy with a side fund.  See Anton Dec., Ex. H, Tr. at 42:4-43:12.

36.   The defendants in the District Court action produced some UBS account records.   However, the records pertained solely to business accounts belonging to IRC Re and not the Debtor.

## *Loring Swasey*

37.   Movants request permission to issue a subpoena to Loring Swasey, in substantially the form attached as Exhibit F

hereto, compelling him to appear for an oral examination and to produce documents relating to the Debtor's assets, liabilities and financial affairs.

38. Loring Swasey is a Senior Vice President-Investments/Private Wealth Advisor with UBS. According to his firm's website, Loring Swasey "focuses on strategic and tactical asset allocation as part of his overall portfolio and risk management approach to helping clients invest toward their goals."[4] The Debtor testified at his meeting of creditors that Loring Swasey (who is the Debtor's brother) has managed the Debtor's money. See Anton Dec., Ex. H, Tr. at 50:9-15. Accordingly, Loring Swasey is believed to have knowledge and information concerning the Debtor's financial affairs, including but not limited to the Debtor's property and the disposition of his assets.

39. No discovery was sought from Loring Swasey in the District Court action and Loring Swasey was not a witness in that matter.

### *Joseph Cifuni*

40. Movants request permission to issue a subpoena to Joseph Cifuni, in substantially the form attached as Exhibit G hereto, compelling him to appear for an oral examination and to

---

[4]

http://financialservicesinc.ubs.com/fa_staticfiles/faw/custom_attachments/BE03390_34566_BIO_PWM_0412_Sager_v6.pdf

produce the Debtor's financial records in his possession and other documents relating to the Debtor's assets, liabilities and financial affairs.

41. The Debtor identified Mr. Cifuni in his Statement of Financial Affairs as a bookkeeper or accountant who has kept or supervised the keeping of the Debtor's financial records within two years of the filing of the bankruptcy case. See Anton Dec., Ex. F.

42. Movants deposed Mr. Cifuni in the District Court action in his capacity as Chief Financial Officer of IRC, Inc. He was not questioned about Swasey's personal finances, which were not at issue in the District Court action. Prior to the filing of the Debtor's Petition Documents, Movants were unaware that Mr. Cifuni had any responsibilities with respect to the Debtor's finances.

### *Bowditch & Dewey*

43. Movants request permission to issue a subpoena to Bowditch and Dewey, in substantially the form attached as Exhibit H hereto, to compel the production of: (1) documents reflecting all payments to Bowditch & Dewey by or on behalf of the Debtor and the source of the payments; (2) documents reflecting all payments of Bowditch & Dewey's invoices in connection with its defense of the District Court action, showing the date, amount and source of each payment; and (3)

documents relating to any transfers of any property of the Debtor, including but not limited to the purported transfer of an interest in Debtor's Manchester residence to Denise Swasey. Movants also seek the deposition of Bowditch & Dewey on these matters through its Chairman, Michael P. Angelini, Esq.

44. Bowditch and Dewey represented the Debtor and his codefendants in the District Court action. As explained above, the Debtor testified at his meeting of creditors that he paid $1.5 million to Bowditch & Dewey in connection with the District Court action but then changed his testimony and stated that he paid only approximately $300,000 to the firm. See Anton Dec., Ex. H, Tr. at 28:22-31:2. Further, the lead Bowditch & Dewey attorney in the District Court action, Michael P. Angelini, Esq., prepared, witnessed and recorded the deed by which the Debtor purportedly conveyed the Manchester residence to the Debtor and Denise Swasey as tenants by the entirety. This raises issues as to whether Bowditch & Dewey has information concerning other transfers of the Debtor's assets.

## ARGUMENT

### The Requested Discovery is Squarely Within the Scope of Bankruptcy Rule 2004

45. Rule 2004(a) states: "On motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. Proc. 2004(a). Rule 2004(b) provides that the

examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed R. Bank. Proc. 2004(b).

46. A Rule 2004 examination "is a pre-litigation investigatory tool used to determine whether a sufficient basis exists to take subsequent action such as the filing of a substantive motion or complaint." In re Underwood, 457 B.R. 635, 642 (Bankr. S.D. Ohio 2011). Therefore, "a movant need not tie the request for the 2004 exam to matters currently pending in the bankruptcy case or adversary proceeding." Id. at 642-43.

47. The scope of a Rule 2004 examination is "extremely broad" and "is of necessity to a considerable extent a fishing expedition." In re Youk-See, 350 B.R. 312, 319 (Bankr. D. Mass. 2011) (quoting In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983)). "In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor." In re GHR Energy Corp., 33 B.R. at, 453.

48. A Rule 2004 examination may be ordered ex parte. In re Youk-See, 350 B.R. at 320 (citing Matter of Wilcher, 56 B.R.

428, 334 (Bankr. N.D. Ill. 1985). However, once a motion to quash a Rule 2004 subpoena is made, the party seeking the discovery has the burden of showing that good cause exists for taking the requested discovery. Id. "Good cause is established if the party in interest seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." Id. (quoting In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992)).

49. In the present case, the requested Rule 2004 examinations are reasonable and necessary to protect Movants' rights and to preserve the integrity of the bankruptcy process. The Debtor's Petition Documents and testimony at his meeting of creditors have raised numerous red flags concerning, among other things: (1) the undervaluation and nondisclosure of valuable assets; (2) the existence of potential voidable transfers; (3) the Debtor's entitlement to a discharge; and (4) whether "cause" exists to dismiss this bankruptcy case under § 707(a), including, e.g., egregious misconduct or abuse and manipulation of the Bankruptcy Code.

50. This Debtor has demonstrated that he cannot be relied upon to provide an honest and transparent accounting of his assets and financial condition. The Debtor should not be allowed to obtain a "fresh start" under the Bankruptcy Code, and to leave creditors empty-handed, without a thorough examination

of the Debtor and persons with knowledge and information concerning his assets, liabilities and financial affairs.

### Movants Have Had No Prior Discovery of the
### Debtor's Assets, Liabilities and Financial Affairs

51.  In his February 3, 2012 objection to Movants' request to extend time to object to the Debtor's discharge, the Debtor falsely asserted that the Movants "already had more than four years to fully investigate Debtor's estate during the protracted and hard-fought litigation against the Debtor." Objection, ¶ 1. The Debtor's personal finances were not at issue in the District Court action and were not the subject of discovery.  See Anton Dec., Ex. N (Plaintiffs' First Request to Defendants for Production of Documents), Ex. O (Plaintiffs' First Set of Interrogatories Addressed to Defendants).

52.  During the Debtor's three-day deposition in the District Court action, the Debtor was asked no questions concerning his assets, other than standard questions about his ownership interest in the corporate codefendants and other companies.  Indeed, in a response to a question concerning the location of the Debtor's shares of NFP, defendants' counsel interjected: "What possible connection does that have to this lawsuit?"  Anton Dec. Ex. P (January 13, 2009 Dep. Tr. at 291:14-16).

53.   Moreover, even assuming, _arguendo_, that the discovery in the District Court action somehow extended to the Debtor's financial affairs, Rule 2004 examinations nevertheless would be appropriate and necessary in this case for two reasons.   First, fact discovery in the District Court action concluded three years ago, on March 20, 2009. The Debtor's deposition was completed on January 14, 2009.   No one could seriously contend that three year-old discovery is a substitute for a Bankruptcy Rule 2004 examination.

54.   Second, the discovery in the District Court action was severely compromised by the Debtor's own misconduct, including the Debtor's pattern of discovery abuses and his false and misleading deposition testimony.

55.   The defendants' failure to produce responsive documents and other discovery violations resulted in the entry of sanctions two sanctions Orders, on March 19, 2009, and June 10, 2009.   See 764 F. Supp. 2d at 308.

56.   Further, the District Court expressly found that Debtor's deposition testimony lacked credibility and was false:

> During his video deposition, Swasey did not sit, dress or generally carry himself in a way to invite this Court to take him seriously or credit his words.   And apart from Mr. Swasey's conduct, which raised questions in my mind about his credibility, his testimony was internally contradictory and obviously false.

Id. at 290 (footnote omitted).

- 22 -

57. In sum, the Movants' right to conduct Rule 2004 examinations should not be limited in any way by the discovery that was undertaken more than three years ago in the District Court action on matters that were unrelated to the Debtor's property, liabilities and financial condition or his right to a discharge in bankruptcy.

### The Requested Rule 2004 Examinations Will Not Overlap With The Discovery, If Any, in the Nondischargeability Action

58. The Rule 2004 examinations that Movants are seeking by way of the instant motion are unrelated to the pending Nondischargeability Action against the Debtor and will not overlap with the discovery, if any, that Movants may conduct in connection with that proceeding.

59. Because Rule 2004 examinations lack the same procedural safeguards as discovery under Rule 7026 et seq., bankruptcy courts have exercised caution in allowing Rule 2004 exams where an adversary proceeding (or litigation in another forum) is pending. See, e.g., In re Washington Mutual, Inc., 408 B.R. 45, 51 (Bankr. D. Del. 2009). In such circumstances, "the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding." Id. at 52 (granting debtors' motion for 2004 exam where information sought related

to fraudulent transfer, turnover and preference claims, and was otherwise unrelated to creditor's pending adversary proceeding against debtors); see also In re Buick, 174 B.R. 299, 306 (Bankr. D. Colo. 1994) (granting creditor's motion to examine the debtor and attorney who assisted him with numerous complex prepetition financial transactions under Rule 2004 "regarding issues in addition to or beyond the scope of" the creditor's pending nondischargeability action against the debtor).

60.   In the present case, as in the Washington Mutual and Buick cases, the information and documents that Movants are seeking by way of Rule 2004 examinations are unrelated to the Nondischargeability Action.   The requested Rule 2004 examinations pertain to the Debtor's assets, liabilities and financial affairs, as well as his to his right to a discharge under § 727(a).   These matters are not at issue in the pending adversary proceeding.   The Nondischargeability Action is limited to the narrow issue of whether the Debtor's obligations to Movants under the District Court's Judgment are nondischargeable under 11 U.S.C. § 523(a)(6) as resulting from a willful and malicious injury.

61.   Any discovery in the Nondischargeability Action would be limited to the specific facts giving rise to the Judgment. Indeed, Movants believe that their § 523(a)(6) claim may be resolved on summary judgment, without the need for any

discovery, by reason of the preclusive effect of the District
Court's Judgment and the detailed findings set forth in the
District Court's Memorandum and Order.

## Conclusion

WHEREFORE, Trenwick America Reinsurance Corporation and
UNUM Life Insurance Company of America pray that this Court
enter an Order granting their request to conduct Bankruptcy Rule
2004 Examinations and for related relief.

Respectfully submitted,

TRENWICK AMERICA REINSURANCE
CORPORATION and UNUM LIFE INSURANCE
COMPANY OF AMERICA,

By their attorneys,

/s/ Michael J. Cahalane_____
Lawrence G. Cetrulo,  BBO# 080000
Rory FitzPatrick,  BBO# 169960
Michael J. Cahalane,  BBO# 664872

CETRULO & CAPONE LLP
Two Seaport Lane, 10th Floor
Boston, Massachusetts 02210
617-217-5500

- and -

Jeffrey S. Leonard
Christopher P. Anton
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
973-379-4800

Dated: March 5, 2012
       Boston, Massachusetts

## CERTIFICATE OF SERVICE

    I, Michael J. Cahalane, hereby certify that I have, on this 5th day of March, 2012, served a copy of the within document, in accordance with ECF requirements for the United States Bankruptcy Court for the District of Massachusetts, upon all counsel of record who have requested such ECF service.  The referenced document has been served on the following CM/ECF participants:


Ira H. Grolman
Donahue & Grolman
321 Columbus Avenue
Boston, MA 02116

Gary W. Cruickshank
21 Custom House Street, Suite 920
Boston, MA 02110

John Fitzgerald
Assistant U.S. Trustee
John W. McCormack Post Office and Courthouse
5 Post Office Square, Suite 1000
Boston, MA 02109

The referenced document has also been served on the following via first class mail:


Martin A. Mooney
Deily, Mooney & Glastetter, LLP
8 Thurlow Terrace
Albany, NY 12203-1006

GE Capital Retail Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh

American Express Bank, FSB
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355 0701

Michael P. Angelini
Bowditch & Dewey, LLP
311 Main Street
Worcester, Massachusetts 01615-0156

Eastern Bank
112 Market Street
Lynn, Massachusetts 01901

Joseph Cifuni
4 Rosemarie Lane
Georgetown, Massachusetts 01833

UBS
1285 Avenue of the Americas
New York, New York 10019

Loring Swasey
UBS Wealth Management
Sager Swasey Group
299 Park Avenue
25th Floor
New York, New York 10171

IRC-OHU Management Company, Inc.
c/o Malcolm C. Swasey, its officer
and Registered Agent
69 Harbor Street
Manchester, Massachusetts 94104

Denise Swasey
69 Harbor Street
Manchester, Massachusetts 94104


/s/ Michael J. Cahalane
Michael J. Cahalane